# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRADLEY LEDURE,

    Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

    Defendant.

Case No. 3:17-cv-00737-JPG-GCS

## MEMORANDUM AND ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

Federal Rule of Civil Procedure 59(e) "is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Erlandson v. ConocoPhillips Co.*, No. 09-99-DRH, 2010 WL 4292827, at *1 (S.D. Ill. Oct. 21, 2010) (citing *Yorke v. Citibank, N.A.* (In re BNT Terminals, Inc.), 125 B.R. 963, 977 (N.D.Ill. 1990)). Nor is it a vehicle for a losing party to misrepresent a district court's opinion, and then seek a review based on those misrepresentations. But plaintiff Bradley LeDure uses Rule 59(e) here for those purposes anyways. This Court previously granted summary judgment in favor of defendant Union Pacific Railroad Company, and LeDure has since filed a motion to alter or amendment the judgment under the rule. (ECF No. 88.)

Instead, Rule 59(e) allows the Court to amend a judgment if the movant "can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). A "manifest error" is a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (internal quotations and citations omitted). This form of relief is only available if the movant clearly

1

establishes the manifest error. *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (citing *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n. 3 (7th Cir. 2001)).

LeDure meets none of those standards, and instead misunderstands or misrepresents both this Court's prior order and the binding caselaw that it relied on. It is unnecessary to address every single one of LeDure's arguments—many of them are rehashes of LeDure's summary judgment arguments, and the Court reaffirms its prior order for all of the reasons therein—but in order to ensure that the Court's order is not warped in any potential appellate briefs, it is necessary to highlight a few of LeDure's arguments: one regarding unpublished district court decisions; one regarding citations; one regarding the nature of the Locomotive Inspection Act, and one regarding the facts of this case.

First, LeDure complains that the Court did not consider a number of unpublished district court cases within the Seventh Circuit, such as *Underhill v. CSX Transportation, Inc.*, No. 1:05-CV-196-TS, 2006 WL 1128619 (N.D. Ind. April 24, 2006) and *Zanden v. Norfolk & Western Rwy. Co.*, No. 93 C 4572, 1996 WL 699604 (N.D. Ill. Nov. 26, 1996). This is a non-starter. As the Court explained in its prior order, the specific question in this case—whether the locomotive was "in use" at the time of the accident—has led many United States Courts of Appeals to inconsistent outcomes with very little guidance. (ECF No. 85, p. 6–7.) And because of that, district courts around the country—many of them in nonprecedential unpublished decisions—are also all over the place in terms of their analysis. For that reason, the Court explained that it would focus its attention on the published appellate cases instead of these nonprecedential district court opinions, explaining: "[b]oth parties in this case accordingly point to an abundance of district court opinions in their favor, but given their sheer number and contrasting outcomes, none of them are very instructive." (ECF No. 85, p. 7.) The Court did not make any manifest errors by rejecting these nonprecedential district court opinions.

> Second, LeDure made the following argument:
>
>> The Court also manifestly erred in concluding that the locomotive would not be in use if precedent from other circuits was applied (Doc. 85 at 9). Most egregiously, in citing *McGrath v. Consolidated Rail Corp.*, 136 F.3d 838, 842 (1st Cir. 1998), the Order mischaracterized the holding as finding a locomotive not in use "if the train is not ready to move into service." To the contrary, *McGrath* found the locomotive was in use because it "was not being stored on the yard track or awaiting removal to the engine house for repairs. Rather [it] was running on the yard track and ready to move into service." *Id.*

(ECF No. 88, p. 8.) That is incorrect. Even a cursory review of the Court's prior order shows that it accurately explained *McGrath* as holding "if the locomotive is running on the yard track and ready to move into service, and the worker was injured while performing pre-departure inspection duties, then the locomotive is 'in use.'" (ECF No. 85., p. 7.) And then two pages later—the page that LeDure complains about—the Court used parentheticals to explain how each of these circuit court cases, such as *McGrath*, would come out if faced with the facts of this case. (*Id.* at p. 9.) LeDure's argument that this was a "most egregious" error by the Court is either a misrepresentation or a misunderstanding.

Third, one of the issues in this case was the application of regulations promulgated under the Locomotive Inspection Act, 49 U.S.C. § 20701. The opening of that statute instructs that a locomotive must be in use for it to apply, and then it delegates authority to the Secretary of Transportation to promulgate regulations to implement the statute. The Court accordingly had concerns as to whether LeDure's cited regulations—promulgated by the Secretary of Transportation pursuant to the Locomotive Inspection Act—would even apply to this case if the Court found that the locomotive was not in use at the time of the accident. The Court asked both parties about this at oral argument, and ultimately agreed with the following response by the defendant:

> **[DEFENDANT]**: And I would just say we disagree [with the plaintiff] that these regulations would apply if you find the locomotive was not in use.

3

> **THE COURT**: So, you are saying if I find the locomotive not in use, then the LIA claims go away; is that what you are saying?
>
> **[DEFENDANT]**: Yes, because those regulations are pursuant to the FRA's authority to promulgate regulations pursuant to the LIA. And, in fact, two of these regulations, the first two, I think, just simply regurgitate the Locomotive Inspection Act, the same language.

(ECF No. 87, 62:9–19.) For that reason, and because the Court found that the locomotive was not "in use" here, the Court found it unnecessary to address any of the arguments pertaining to the specifics of those regulations—including 49 C.F.R. § 229.119(c), which LeDure centers most of his complaints on, and 49 C.F.R. § 229.21, which LeDure accuses the Court of dismissing "without discussion or analysis." (ECF No. 88, p. 13.)

Finally, the last issue is one of fact. The Court previously dismissed LeDure's negligence claim because there was zero evidence in this case that anyone had any notice of the "small slick spot" on the walkway—a substance that LeDure could not even identify—before he slipped on it. That lack of evidence was particularly concerning here because (1) LeDure admitted that he did not see anything coming out of the engine compartments; (2) a Union Pacific representative testified that there were no components in the architecture of the locomotive near that area that could have leaked and caused the "slick spot"; and (3) LeDure wore these same boots around his farm, adding yet another wrinkle to the myriad of ways that this slick spot could have allegedy gotten onto the walkway. (*See* ECF No. 85, pp. 10–13.) The Court then explained that the plaintiff's case here was even weaker than the situation in *Holbrook v. Norfolk Southern Railway Co.*, 414 F.3d 739, 742 (7th Cir. 2005), in which the Seventh Circuit dismissed Holbrook's claim because he had not shown "circumstances which a reasonable person would foresee as creating a potential for harm"—specifically because "there is absolutely no evidence that the grease was on the ladder before Holbrook stepped on it. And even assuming that the grease was on the ladder

before Holbrook stepped on it, there are a myriad of possible ways the substance could have gotten onto the ladder….” *Id*. at 744–45. *Holbrook* governs and forecloses LeDure's argument.

LeDure objects, but only one of those objections deserves particular attention: "the Court disregarded the fact that oil had previously been discovered on the same area of this locomotive before the incident, supporting a reasonable inference that this locomotive either had a source leaking oil or that Defendant had insufficient clean up practices." (ECF No. 88, p. 16.) But LeDure's statement is not an honest depiction of that evidence: he fails to mention that this prior discovery occurred *three years* before the incident in this case. (ECF No. 55-5.) He did the same in his response to the motion for summary judgment. (ECF No. 55, p. 4.) It is highly questionable whether this evidence from three years prior—with no further explanation from LeDure—is even relevant to the accident in this case. Instead, LeDure merely speculates that they are related, and speculates that a prior inspection would have revealed the substance and stopped the fall. But as *Holbrook* explained, and as the Supreme Court has mandated, "[s]peculation cannot supply the place of proof." *Moore v. Chesapeake & O. Ry. Co*., 340 U.S. 573, 577 (1951).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiff Bradley LeDure's motion to alter or amend the judgment. (ECF No. 88.)

**IT IS SO ORDERED.**

**DATED:  MAY 20, 2019**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**U.S. DISTRICT JUDGE**
